SAMUEL I. ANDREWS, MORDECAI PRINDLE and JOSIAH PRIN-
DLE, *against* JESSE PARDEE.

MOTION for a new trial.

This was an action on the case. It was alleged in the declaration, that on or about the 20th day of *May*, 1807, the plaintiffs owned and possessed a certain bill of exchange, drawn by *George Cruden* at *Barbadoes*, on *James Barclay*, Esq. of *London*, payable to *A. T. Brown* of *Antigua*, or his order, sixty days after sight, for two hundred twenty-five pounds sterling, bearing date the 3d day of *June*, 1806 ; which bill, on or about the 3d day of *June*, 1806, was, for a valuable consideration, indorsed by *Brown* to the plaintiffs ; that the bill was accepted by the drawee, but was afterwards regularly protested for non-payment, and that due notice of such protest was given to the drawer and indorser ; that the plaintiffs had a valid claim on the drawer, indorser and acceptor, for the amount of the bill, together with interest, costs, and damages ; and that afterwards, to wit, on or about the 20th day of *February*, 1807, the bill being due and unpaid, the plaintiffs delivered the same, with the protest, to the defendant, to collect for their benefit ; that the defendant received the bill and protest, and undertook, for a reasonable compensation, to collect the amount thereof for the plaintiffs, in cash or government bills, and for that purpose proceeded to the *West Indies*, where *Cruden* and *Brown* lived, but disregarding his duty and undertaking, and with intent to defraud the plaintiffs, he delivered the bill to *Cruden* the drawer, and received in full satisfaction and payment thereof, *Cruden's* promissory note for the sum of 254*l.* 12*s.* 6*d.* sterling ; at which time *Cruden* was of sufficient ability to pay the amount of the plaintiff's claim ; and that immediately afterwards, the defendant delivered the note to Messrs. *James Walcott & Co.* of *Barbadoes*, for collection, for, and on account of the plaintiffs, and notified the plaintiffs thereof ; that the

*A.*, as the agent of *B.*, having received a note to collect of *C.*, without authority, and without consideration, delivers it up to *C.* the maker, *C.* being insolvent; held, in an action on the case brought by *B.* against *C.* for delivering up the note, that the insolvency of *C.* might be given in evidence in mitigation of damages.

plaintiffs, thereupon, directed *Walcott & Co.* immediately to collect the note for them; that the defendant, knowing the facts above stated, on or about the 1st day of *August*, 1807, without having taken any steps to collect the note, applied to *Walcott & Co.* and took the same out of their hands, and without any authority from the plaintiffs, and without any consideration therefor, delivered the same to *Cruden* the maker, and in lieu thereof, received back the bill of exchange; and that immediately afterwards, *Cruden* became totally insolvent. It was also averred, that the defendant negligently and fraudulently omitted to take any measures to enforce the collection of the bill or note, whereby the plaintiffs had wholly lost their claim.

The defendant pleaded in bar, a judgment in a former suit; in which plea it was averred, that the plaintiffs had brought their action against the defendant for delivering up the bill to *Cruden*, and receiving the note in lieu thereof, as above stated, by which means the plaintiffs had lost their debt; that there had been a trial of such action, on the plea of not guilty, upon which a verdict and judgment had been obtained for the defendant. It was also averred in the plea, that the former suit was for the same cause, matter and thing, for which the present action was brought.

The plaintiffs replied, that on the trial of the former suit, the court restricted the jury to the consideration of the fact of the delivery of the bill of exchange to *Cruden* by the defendant, and of his receiving in lieu thereof the note in question; and also, that the court instructed the jury not to take into consideration the taking of the note from *Walcott & Co.* and exchanging it with *Cruden* for the bill of exchange, which is the *gravamen* in the present action; and that the jury, in conformity to the opinion of the court, gave their verdict for the defendant. To this replication there was a demurrer and joinder in demurrer; and the court adjudged the replication sufficient.

The defendant, thereupon, moved to be heard as to the assessment of damages. It was admitted by the parties, that the abovementioned note was delivered up to *Cruden* without

authority, and that the defendant took back the bill of exchange, and on his return to this country, offered the same to the plaintiffs, which they refused to receive; and that no part of such note had ever been paid to the plaintiffs. The plaintiffs claimed, that from the facts admitted by the pleadings, they were legally entitled to recover of the defendant, the full amount of the note delivered up to *Cruden*. This claim was resisted by the defendant, on the ground, that at the time the note was so delivered up, *Cruden* was insolvent, and unable to pay the note, or any part of it. The only question, therefore, between the parties, respected the amount of damages to be recovered.

The defendant offered evidence to shew, that at the time when the note in question was by him delivered back to *Cruden*, he, *Cruden*, was totally insolvent. The plaintiffs objected to the admission of this evidence, upon the ground that the proof of that fact could not vary or mitigate the damages, to which they were entitled; but the court overruled the objection, admitted the evidence, and assessed nominal damages only, in favour of the plaintiffs; and the plaintiffs moved for a new trial, as to the assessment of damages, on the ground that the evidence offered ought to have been rejected. This motion was allowed, and the question of law arising thereon, was reserved for the consideration of the nine judges.

*N. Smith* and *Bristol*, in support of the motion. It is admitted, that the plaintiffs were the lawful proprietors of the note in question. The defendant was the agent of the plaintiffs for a particular purpose: He was authorized to collect the note merely, but had no authority to deliver it up to the maker, or cancel it. We contend, therefore, that the rule of damages must be the amount of the note and interest. The rule of law is this, that in all those cases, in which the principal, by the misconduct of the agent, may treat the debt or property as the agent's, or where by the negligence or fraud of the agent, the property or evidence of the debt is lost to the principal, the value of the property, or the amount

June, 1811.

ANDREWS
v.
PARDEE.

of the debt, shall be the rule of damages; and this will hold true without any regard to the benefit which may have resulted to the agent from the transaction. But where the conduct of the agent has been such, that the principal has only been delayed, or injured in a partial degree, and in such a manner that the evidence of the debt or the property still belongs to the principal, or is in his power, a less sum than the full amount of the debt, or the full value of the property, may be given; in that case, damages will be apportioned to the injury. In the case of *Russell* v. *Palmer*, 2 *Wils.* 325. relied upon by the defendant's counsel, there was no loss of the debt; *Russell* still retained his original demand. That case, therefore, does not correspond with the present case. The principle for which we contend is fully illustrated by the decisions in cases relating to unauthorized sales by factors. *Anon.* 2 *Mod.* 100. *Sadock* v. *Burton, Yelv.* 202. *Anon.* 12 *Mod.* 515. *Le Guen* v. *Governeur & Kemble*, 1 *Johns. Ca.* 437. *in nota.* Also in actions against attornies for gross negligence. *Executors of Smedes* v. *Elmendorf*, 3 *Johns. Rep.* 185.

Again, insolvency of the maker of a note, will not justify an agent or attorney in destroying it. As it respects the plaintiffs, the note in question has been annihilated, by the act of the defendant. Shall he then, to diminish damages, allege the insolvency of the maker? This is contrary to the uniform decisions in all analogous cases. A man, although insolvent at present, may yet come into the possession of property, or he may have great expectations from his friends, his talents or other circumstances; and may in future be able to pay his debts. The enquiry into these subjects would be endless, and could not terminate in any certain or beneficial result.

Further, the defendant in delivering up this note, has been guilty of a *tort*. Can any one, under such circumstances, justify himself, on the ground that the maker was insolvent, an infant, or *feme covert*, or that the note was usurious? This cannot be: In all cases which sound in *tort*, the rule of damages is the value of the property destroyed. We contend, that upon every principle of justice, the plaintiffs are enti-

tled to recover of the defendant the whole amount of the debt against *Cruden ;* and, therefore, that the evidence of his insolvency was improperly admitted.

*Daggett* and *Staples*, contra.

It is not alleged in the declaration, that the defendant delivered up the note to *Cruden* with any fraudulent view. All that appears is, that a cause of action existed against the defendant. The whole case, on the hearing in damages, is not, therefore, before this court. It is clear, that a new trial of this case ought not to be granted, merely because improper evidence was admitted on the hearing in damages. If the evidence was improper, the judges would not regard it : it would be otherwise, we admit, in case of a trial to the jury.

We contend, that the defendant has neither changed, nor destroyed the security of the plaintiffs' debt. The bill of exchange was as good evidence of the debt against *Cruden* as the note.

The evidence offered in mitigation of damages, was proper, according to the strictest principles of law. The decisions in cases relating to unauthorized sales by factors, stand on very different grounds from the present case, and bear no analogy to it. The case of *Le Guen* v. *Governeur & Kemble*, reported in a note, 1 *Johns. Ca.* 437. is not applicable to this case. In that case, the court proceeded upon the ground, that the defendants were to be considered as the purchasers of certain goods : the action was brought to recover the value of them. In this case, no question of insolvency arose.

We admit, in the present case, that the plaintiffs are entitled to recover of the defendant the value of the note delivered up to *Cruden ;* and we contend that the actual value, is the only rule of damages. The ability of the maker to pay, is a proper subject of enquiry to ascertain this value. What reason can be assigned, why the same rule should not be adopted in this case, as in case of destruction, or injury, in relation to any other species of personal property ?

The amount of damages, in all cases, must be apportioned to the actual injury sustained.

Suppose that *Cruden,* after the execution of the note, had died, being insolvent, and that a dividend of 10 *per cent* only, had been declared in favour of the creditors, and afterwards, the note had been cancelled, or delivered up to the executors by the defendant ; what then would be the rule of damages ? Would it be the whole amount of the note, or the amount of the dividend only ? Nothing is more clear, than that the amount of the dividend would be the only rule. It must follow, then, that an enquiry may be had as to the value of the note ; and if any thing less than the whole amount can be given in damages, the evidence which was offered in this case, was properly admitted. It is proper, in all cases of this sort, that the assessment of damages should be left to the discretion of the jury. *Pitt* v. *Yalden,* 4 *Burr.* 2060. *Russell* v. *Palmer,* 2 *Wils.* 325. *Purviance* v. *Angus,* 1 *Dal.* 180. In actions against sheriffs for escapes, on mesne process, the decisions have been in conformity to the principle for which we contend. *Burrell* v. *Rithgow,* 2 *Mass. Rep.* 526. *Ravenscroft* v. *Eyles,* 2 *Wils.* 294. The doctrine contended for by the plaintiffs, is founded upon a mere technical principle of law, which has been adopted in cases no way analogous to the present.

INGERSOLL, J. (After stating the case.) The question now is, whether it was competent for the court to hear the evidence offered by the defendant ? My opinion is, that it was competent for the court to hear such evidence, and consequently, that there ought not to be a new trial. It is contended, that the defendant in this action, acted as an agent and attorney of the plaintiffs, and if he mismanaged with respect to the property committed to him, by deviating from his instructions, that he is liable to his principals for the value of such property.

Assuming this position to be correct, it necessarily follows, that there must be an enquiry with respect to the value of it, at the time when he became so liable. This property being

June, 1811.

ANDREWS
v.
PARDEE.

a promissory note against *George Cruden*, the question is, whether the enquiry ought to be confined to a mere casting of interest on the note, in order to ascertain the amount at the time when the liability commenced, or whether the enquiry should be extended to the ability of the promissor to pay it at that time? And as to this question, it appears to me, there can be but one opinion, if, in forming this opinion, we are governed by the sound dictates of the understanding, and not by metaphysical nicities. When I say this, I mean, if we take up the question without any technical ideas on the subject, and without any precedents to guide us. In this point of view, surely it must be a very important enquiry, whether or not, the promissor were a bankrupt? Because, if in fact he was a bankrupt, and was worth nothing, he could pay nothing. The note, in such case, would fetch nothing in market. In short, we get a rule for damages, by making the same enquiry in order to ascertain the value of the note, which we should make to ascertain the value of any other property. It is a plain, simple enquiry, and the result is clear.

But it may be, and indeed, has been objected, that the promissor, if sued on the note, never can say, that it is of less value than the principal and interest due on it, on the ground of his being unable to pay it. This principle, it is said, will hold good both when the promissor is sued on the note for the non-performance of his contract, and when an action of trespass or trover is brought against him for having tortiously taken it, or for tortiously holding it. I agree to this principle. It strikes me, however, that the case of the promissor, when an enquiry is made as to the value of the note, stands on a different ground from that of an agent or attorney. By entering into the contract, the promissor engages to pay the promissee a specified sum, and it never shall lie in his mouth to say, when sued on the contract, that he is not obliged to perform it specifically. And it would be absurd to have a different rule of damages, if sued on the contract, from what would take place, if sued in trespass or trover. This, in truth, would be to give him a premium for unwarrantably laying his hands on the note.

Again, I apprehend, there is another principle which distinguishes the case of the promissor from the case of the agent. By executing the note for a certain sum, he has set a value upon it, and this sum shall no more be departed from by him, than the value of property insured, shall be departed from by the parties to a valued policy of insurance. He virtually, though not in so many words, engages that the note, as to him, shall be of a particular value, as long as by law he shall be obliged to pay it. If he tortiously seize on the note, and convert it to his own use, this value is fixed on him; and if an action be brought against him for thus seizing and converting it, he must refund the same value in damages, and perhaps, somewhat more, for the tortious seizing. The case of an agent, as I think, is not so. He takes a note to collect, or to use due means for the collection. He neglects these means. The question is, what damage has the principal suffered by this neglect? Has he lost his debt by such neglect? If so, the agent ought to be answerable for the whole. If, however, the debt be a bad debt, the debtor not having a cent of property, shall the principal make it a good debt against the agent? I trust the law will warrant no such unjust speculation.

But further, it appears to me, though this very question may never have been decided, yet, that cases have been decided, which bear strongly upon it. It is a well known fact, that public securities, as they are called, have, in years past, been greatly depreciated. Many notes have been given payable in those securities, at a future day. These notes have been sued, and the question has been, as to the rule of damages; and what has been the rule given by the court? The answer is, the value of the securities at the time, when, by the contract, they were to be delivered. How is that value to be ascertained? By testimony as to their worth in market at such time. What are these securities, but promissory notes in favour of an individual against the government? The government, if suable, would be liable to pay the face of them, in the same manner as an individual would be obliged to pay the face of his note.

It may be said, that an officer neglecting to do his duty on an execution, whether the debtor be solvent or insolvent, is liable to the creditor for the whole debt. So also, if the sheriff suffer his prisoner to escape from gaol, being imprisoned on an execution, he is in like manner liable. Be it so. Such have been the decisions. These cases stand on peculiar grounds. They, together with one I shall hereafter mention, are exceptions from the general rule. One reason, perhaps, why the sheriff and other officers, have been held to answer for the whole debt, is, that they are public officers, sworn to do their duty ; and it might be dangerous to the community, if they might speculate upon the ability of the debtor, and be thereby induced to neglect their duty, under an idea that small damages only could be given against them. The statute, however, places neglect of duty, with respect to all writs, both of mesne process and execution, on precisely the same ground, to wit, by directing the court or justice, to " award damages to the party aggrieved, having respect to the quantity or quality of the action, and the peril that might have happened to him, by the delay which he suffered." It is possible, also, that the practice of assessing damages in this manner, may have been adopted from the practice in *Westminster-Hall*, of obliging the sheriff to pay the whole debt, when a particular kind of action, I mean the action of debt, is brought against him for the escape of a prisoner. By the common law, no action of debt would lie against the sheriff for an escape ; but a reparation in damages must have been obtained by an action on the case, in which, a jury were called upon to assess the damages. And by an equitable construction of the statutes of *Westm.* 2. ch. 13. and *Rich.* II. ch. 12. an action of debt was held to lie against the sheriff or gaoler, having in their custody a prisoner, charged in execution, for a sum liquidated and ascertained. After this action came into use, the debt was supposed to be transferred from the debtor to the sheriff or gaoler, and the whole was given against them, upon the principle, that in *debt*, the whole, or nothing, must be recovered.

But the principle of giving the damage actually sustained,

if case be brought against the sheriff instead of debt, has been recognized in modern times. I allude more particularly, to the case of *Bonafous* v. *Walker*, 2 *Term Rep.* 126. to establish this point. That was an action of debt, brought against the marshal of the marshalsea, for an escape of a prisoner, on execution in his custody. It was tried before Mr. Justice *Buller*, and a verdict obtained for the whole debt. A rule to shew cause, why there should not be a new trial, was granted, and among other reasons for a new trial, it was urged, that the jury were not obliged to award to the plaintiff the whole debt, though it was an action of debt. In urging this point, it was stated by the counsel, that if the action had been an action on the case for the same cause, it was admitted, that the jury might have given nominal damages. Mr. Justice *Buller*, in giving his opinion, says, " The distinction between an action of debt, and on the case, is this ; at common law, an action on the case only lay against the sheriff or gaoler for an escape, in which case, the creditor might recover damages for the officer's misconduct, but still he had a right to recover the debt against the original debtor." " But the statutes gave an action of debt against the sheriff or gaoler, to recover at once, the sum for which the prisoner was charged in execution." " Now, these being affirmative statutes, did not take away the common law remedy ; so that the creditor has his election ; but if he adopt the latter, he must recover the whole sum."

The other exception abovementioned, is that of a bill of exchange. It is an agreed point, that in order to make the drawer liable on a protested bill, it is essentially requisite to give him due and seasonable notice of its non-acceptance, or non-payment. This must be done in every instance, except where the drawee has no effects of the drawer in his hands. This, though urged to be a point now settled, yet it has been formerly much discussed in *Great-Britain ;* and it has been again and again contended, if the drawer had not suffered by the want of notice, that is, if there had been no alteration of circumstances in the drawee, so as to affect the drawer, that he should be liable, though he had no seasona-

ble notice of the bill being dishonoured. But as I have before observed, the technical rule is, that notice shall be given. There is so much business done in the commercial world, by negociating bills of exchange, that it is thought better to adopt such a rule, though it may work mischief, in particular cases, than to have the question open in every case, whether the drawer has actually suffered by the laches of the holder ?

It was admitted by the counsel, who argued in favour of granting a new trial, that an attorney would not, in every instance, be liable to the extent of the debt, in case of mismanagement in collecting it. To prove this position, they cited *Russell* v. *Palmer*, 2 *Wils.* 325. where an attorney was sued for not charging the defendant in execution within two terms next after recovering judgment, by means of which, he was discharged from his confinement in gaol. A verdict was obtained for a considerably less sum than the amount of the debt. The principle, that the jury were not obliged to assess in damages the whole debt, was recognized by the court; and the reason given, why no more damages were assessed in that case, was, " that there was some evidence, that *Stewart* (the debtor) was not totally insolvent, and that *Russell* (the creditor) possibly might be able, in time coming, to obtain some part of his debt, by execution against his goods," &c. The same principle is also recognized in the case of *Pitt* v. *Yalden*, 4 *Burr.* 2060. It was an application made to the court to proceed summarily against the attorney, and to oblige him to pay the debt and costs, for not having declared against the defendant within two terms. The court refused the application, and said, the plaintiff must proceed by way of action against the attorney to recover his damages, to be assessed by a jury : And Mr. Justice *Yates* gives it as a reason why the damages ought to be assessed by a jury, that " the whole of the debt might not be recoverable." I presume the case from *Wilson* was cited to prove, that though the whole debt is not always the rule of damages against the attorney, in a case of mismanagement, yet, that where a sum short of that is given, it is only in a

case where the defendant is solvent, and the debt still recoverable. I think the case proves more than this. The court do not say, that the debtor is still able to pay the debt, but only, that " there was some evidence that *Stewart* (the debtor) was not totally insolvent, and that *Russell* (the creditor) might be able, in time coming, to obtain some part of his debt, by execution against his goods." The case proves that an enquiry may be gone into, with respect to the *quantum* of the damages sustained by the principal, on account of the neglect or mismanagement of the attorney. The enquiry was, what has the principal suffered by the conduct of the attorney ? Let the same enquiry be made in the present case. To this point, the evidence offered, was material.

Again, it is to be noticed, that Mr. Justice *Yates* says, in the case cited from *Burrow,* " that the whole of the debt might not be recoverable." If he meant (as I think the words will bear that construction,) that the whole debt might not be recoverable, because the debtor might be unable to pay, it is a case directly in point. But it may be said, that he meant only, that the whole debt demanded in the declaration, might not be recoverable, as he afterwards says, " The real debt is not ascertained, nor the *quantum* of it." Perhaps the words may bear either construction, and perhaps both.

The case of *Le Guen* v. *Governeur* & *Kemble,* 1 *Johns. Ca.* 437. *in nota,* was cited to prove, that nothing short of the principal and interest of the note ought to have been given by way of damages. This case was determined in the Supreme Court of the state of *New-York,* and the judgment was affirmed by the Court of Errors of the same state. It is a very long case, and several points were determined by the court, but none that I have been able to find, have any bearing on the present question. The great point in that case was, whether *Governeur* and *Kemble,* (being agents of *Le Guen,*) by refusing to authorize him to receive the avails of certain shipments to *France,* after taking out certain expences, had not, at all events, made themselves liable to him for the whole property shipped, according to the value of it, as sold by them in *New-York,* they having ostensibly

June, 1811.

ANDREWS
v.
PARDEE.

sold it to *Gomez, Lopez & Rivera?* or whether the rule of damages should be the net produce of the sales, after taking out certain balances and expences ? The court determined, that *Governeur & Kemble* by not giving the authority to *Le Guen,* which, it was said, they were by the contract bound to give, had taken the whole property to themselves, and should be answerable for the value of it, when shipped at *New-York,* in the same manner as a factor would be liable, who was instructed by his principal to sell goods for cash, but yet should sell on a credit. The factor, in such case, must answer to his principal for the value of the goods, whether he should ever receive any thing for them or not. So said the court in that case, " *Governeur & Kemble* must pay to *Le Guen* the value of the goods at *New York,* to wit, the amount of the note of *Gomez, Lopez & Rivera,* which they had given for them ;" and there was no question made, but the note was a good note at the time it was executed.

From the best consideration, therefore, which I have been able to give this subject, I am of opinion there ought to be no new trial of this case.

I think, as I have before observed, that in cases of this kind, evidence of the ability of the promissor to pay the note, may be received. If the note, on investigation, should appear to be good, it ought to make no difference in assessing damages, whether the promissor be a punctual or a slack man ? Interest would be given, by way of damages, for delay of payment. If, however, on such investigation, the promissor should appear to be a bankrupt, and to be unable to pay any thing, the note then would be worth nothing, and no more than nominal damages ought to be given.

I have been more minute in my observations than I should have been, had not several of my learned brothers entertained a different opinion on this subject, from me. This circumstance alone, would cause me to distrust myself, in every case, where I had the least doubt. I have no doubt, however, in the present case ; but after all, it is possible I may be wrong.

VOL. V.                    F

In this opinion, REEVE, TRUMBULL, EDMOND, BRAINARD and BALDWIN, Js. severally concurred.

MITCHELL, Ch. J. dissented to the opinion of the majority of the court.

SMITH, J. The gist of this action is the giving up a note, by the defendant, without authority, which was the property of the plaintiffs ; and all that is stated relative to the giving up the bill of exchange for the note, the former suit, and notifying the plaintiffs of that transaction, might as well have been omitted ; and being stated, only serves to shew how the plaintiffs came by the property of the note. If the plaintiffs had made that exchange themselves, or obtained the note in any other course of dealing, this cause would stand on the same ground it now does.

It is conceded upon the record, that this note was the property of the plaintiffs, and was given up by the defendant, without authority. His taking back the bill of exchange, and offering it to the plaintiffs, can avail nothing. They were clearly not bound to receive it. None of the facts, therefore, which took place, either before or after, giving up the note in question, could have any effect to mitigate damages ; but if they could, proof of insolvency would not vary their operation, or increase their force.

The only question, therefore, which this record presents, is, whether proof of insolvency of the promissor of a note, can be admitted to mitigate damages, where the defendant has given it up without authority ?

I consider the law to be well settled on this subject. If an attorney is guilty of any negligence, or other misconduct, in the management of a claim put into his hands for collection, which occasions delay or hazard, merely, he is liable for the actual damages sustained ; and the creditor may still pursue his remedy against his debtor : and in a case of this description, it would be proper proof to mitigate damages, that the debtor was a man of sufficient property to pay the whole, or a part of the debt, though proof that he was insol-

vent, and had no property, could not be admitted to mitigate damages. But if the attorney, by his negligence, or misconduct, extinguishes the debt, either by cancelling, or giving up, or destroying the security, he at once assumes the debt.

What if the debtor is insolvent? The money might be secured through the medium of friends, or he may become a man of property hereafter, and the money may be collected. The rule would be the same, where notes are taken wrongfully from the possession of the creditor, or wrongfully converted.

But it is objected, that the rule of damages, wherever property is illegally taken, or disposed of, is the value of the property, and that proof of insolvency in the debtor, only goes to the value of the article. I admit, that the value of the article taken or disposed of, is the proper rule of damages; but the only legal value of a credit is the amount of it, and no other rule of valuation can be adopted. The ability of men to pay their debts cannot be graduated. One man without property, may be more safely trusted, than another with a large estate, if the credit is to be given for a long period. One man may have a large estate in possession, but owes more than it is worth; still his credit may be good: Another may possess more property in value than the amount of his debts, but has lost his credit. One man may have habits of industry and economy, worth an estate. The integrity of another may induce those best acquainted with him, to give him credit; and while he might be proved insolvent, and a jury thereby induced to give but a small sum for a note wrongfully taken; yet the creditor might be unwilling to part with it for a sum short of the full nominal amount. The habits of another may be generally correct, but is addicted to some pernicious vice, which injures his prospects of success: Another may have property in expectancy; and in this case, the age of his ancestor, the state of his constitution and health, the amount of his property, and number of other heirs, are all matters of consideration, in coming to a result, as to the value of the debt.—Again, the situation of a debtor's family, the health of his wife, and

June, 1811.

ANDREWS
v.
PARDEE.

that of his children, their habits and pursuits, must all be subjects of enquiry. In short, there is such an infinite variety of shades in the circumstances and prospects of men, that an attempt to estimate the real value of their debts, would lead to endless enquiry, and produce no beneficial result.

But again, when you have obtained judgment against the wrong-doer, you have but a debt against another; and who knows that the prospect of collecting the money, is better than it was against the original debtor? One may be insolvent, and so may be the other; shall we then, enquire into the circumstances of the defendant also, and give more or less damages, as we find his solvency to compare with that of the original debtor? This must be done, if the enquiry is admitted at all; for surely, the creditor ought to be placed in as good a situation as though he had not sustained the injury; and it would do manifest injustice to give him judgment for a less sum than was due to him before, unless you give him an equivalent by bettering his security.

Suppose the debtor himself converts a note, shall we adopt a different rule of damages, from the one adopted in case a third person converts it? Is not the value of the article as much the rule of damages, in the one case as in the other; and is not the value the same to the creditor, in both cases?

If a sheriff suffers a voluntary escape of a debtor, taken in execution, he thereby assumes the debt, though the rule of damages, in all cases of misconduct in a sheriff, is the same as in injuries by others. The real damage sustained, is the rule in both cases; but where that injury consists in the destruction of a debt, the amount of the debt is the only rule of damages. Will it be said, that a sheriff, who has suffered an escape, cannot avail himself of the insolvency of the debtor; and yet, that an attorney, who has, without authority, and in violation of his duty, given up a security, may avail himself of such insolvency? This would be making a distinction, where there is no difference in circumstances; both would be guilty of a breach of duty; both would be liable to the real damages; and the only question

would be, what are the amount of those damages ? If there
is any difference, it would be in favour of the sheriff, because
the creditor may take out another execution, and still take
the debtor; whereas, in the other case, there is no possible
remedy against the debtor. I am, therefore, clearly of opin-
ion, that the amount of the debt, in a case of this kind, is
the only rule of damages ; but, if we were to adopt any differ-
ent rule, still, I think the enquiry should be, what is the
security worth in the market, to be sold at the risk of the
purchasers ? and the rule should be its appraised value. I
see no more propriety in enquiring into the particular circum-
stances, situation and prospects of a debtor, in order to esti-
mate the value of his security, than I should to enquire into
the particular situation, soil, and quality of lands, in order
to estimate their value ; or the shape, proportion, carriage or
gait of an horse, in order to estimate his value. These en-
quiries would lead to endless investigations, and produce
nothing but doubt and uncertainty.

Suppose we were to form an estimate upon the value of
bank stock, which is claimed to be worth either more or less
than par, should we enquire into the amount of dividends,
and into all the minute circumstances which might affect
those dividends in future ; or would the enquiry be, what is
the worth in market ; and could not the court take at once
its appraised value for their rule ? Or suppose the case of a
public security, which is claimed to be depreciated, and the
court are about to form an estimate of its value, will the
court enquire into all the minute circumstances attending it ;
or will they be governed by its value in the market ?

I think, therefore, that proof of insolvency, in any point
of view, could not be admitted ; and that a new trial ought
to be granted.

SWIFT, J. The plaintiffs were not bound to accept the
bill of exchange in lieu of the note. It was a breach of trust
and duty in the defendant to give up the note and take back
the bill of exchange ; and he can take no benefit of such
wrongful act. It is not for him to say, that one is as good

June, 1811,

ANDREWS
v.
PARDEE.

as the other: he has acted without authority, and ought to suffer the consequences of it. I think that the case stands precisely on the same ground as if the defendant had given up the note against the directions of the plaintiffs, and had not received back the bill of exchange; and that the only question is, whether the defendant can give in evidence the insolvency of *Cruden?*

It is a clear principle of justice, and I apprehend no precedent can be found to the contrary, where a man wrongfully takes or destroys a chose in action belonging to another, as a bond, bill or note, that it is not competent for such wrongdoer to shew, in mitigation of damages, that the debtor was insolvent; but the rule is the amount of such bond, bill or note, or other chose in action. So, if an agent or attorney should, without authority, from this principle, give up or destroy a note, bond, or other chose in action, the same rule of damages would apply. This rule is founded in the highest reason. For it never can be ascertained, that the debtor would not have paid the whole sum. It does not conclusively follow, that because a man is bankrupt, that he will not pay his debts; he may have means not apparent;—friends also would assist him: he may make great exertions to save his credit; and he may, at some future time, become able to pay the whole.

Suppose, in this case, the court render judgment for one dollar damages, and *Cruden*, in a short time, should become heir to an independent estate, and should discharge all his debts; such judgment would then operate with the greatest injustice as it respects the plaintiffs. The only rule, then, that under all possible circumstances, can do justice to the party injured, is to give him the nominal amount of his claim. A wrong-doer cannot complain of this: He has destroyed the evidence of a debt, and it is not for him to say, that it is of less value than it purports to be: And courts are not bound to exercise such a tender regard for him, that for fear he should pay more than the thing was possibly worth, the innocent proprietor should be subjected to the

chance of taking less. Wrong-doers ought to suffer to the utmost possible extent of the injury they have committed.

Where an agent or attorney, intrusted with a note, or other chose, is guilty of a neglect of his duty, and retains the note, &c. so that the claim of the principal is not destroyed, there it would be reasonable to enquire into the ability of the debtor; and the just rule of damages would be the actual amount of the injury sustained. The case of *Russell* v. *Palmer*, 2 *Wils*. 325. so much relied on by the counsel for the defendant, goes no further than this. That was an action against an attorney for a neglect of duty, in not charging a debtor in execution within due time; and it appearing in evidence, that the debtor was not totally insolvent, and that the plaintiff might recover part of his debt, the jury were told they might find what damages they pleased; and they accordingly found less than the debt.

I think a new trial ought to be granted.

New trial not to be granted.